# Third District Court of Appeal

## State of Florida

Opinion filed December 16, 2020.

_____

No. 3D19-1521
Lower Tribunal No. 13-38896
_____


**Mark Koyfman,**
Appellant,

vs.

**1572 Pledger LLC,**
Appellee.


An Appeal from the Circuit Court for Miami-Dade County, Abby Cynamon, Judge.

Michael S. Kaufman, for appellant.

Stok Kon + Braverman, and Robert A. Stok and Michael E. Bonner (Fort Lauderdale), for appellee.


Before EMAS, C.J., and GORDO and LOBREE, JJ.

LOBREE, J.

ON MOTION FOR REHEARING

We deny the motion for rehearing but withdraw our prior opinion and issue the following in its stead.

Mark Koyfman appeals from a final judgment of foreclosure entered in favor of 1572 Pledger, LLC (the "subsequent mortgagee"), as well as the denial of his counterclaim to quiet title, charging error to the trial court's failure to dismiss the suit below and enter judgment in his favor pursuant to CDC Builders, Inc. v. Biltmore-Sevilla Debt Investors, LLC, 151 So. 3d 479 (Fla. 3d DCA 2014). For the following reasons, we agree and reverse.[1]

Having lived together and just had a child, Koyfman and Irina Kosterina decided to move to Florida in 2003. He was a licensed realtor by trade. She was an accountant. As a couple, they invested in at least one business and purchased several properties. In 2007, Kosterina acquired the apartment foreclosed on below and executed a note and mortgage in favor of Regions Bank (the "original mortgagee") in connection with a personal $50,000 line of credit. In 2008, she quit-claimed the property to 604 Harbour House, LLC (the "first company"), an entity she formed and managed herself.

In 2009, Koyfman and Kosterina ended their personal and business relationship. Kosterina, through her first company, quit-claimed the apartment to

_____

[1] We decline to reach the remaining issues raised on appeal.

Koyfman. The deed was "[s]ubject to that certain Mortgage given by [Kosterina] in favor of [the original mortgagee]." Koyfman made the apartment his primary residence, and paid for maintenance, condominium dues, and all property taxes. He failed, however, to make any mortgage payments.

In 2013, after several years of continuing to make mortgage payments on the loan for which the apartment served as collateral and having consulted the attorneys who represented her below, Kosterina created Apt. 604 Bal Harbour Condo, LLC (the "second company"). According to her testimony, she did this "in order to purchase the mortgage and note from [the original mortgagee] to satisfy [her] debts and recover [her] loss." Through her second company, created and managed solely by her, Kosterina paid off the balance of the loan. However, she asked the original mortgagee to sell the rights to the mortgage to her second company, instead of satisfying the loan and extinguishing the mortgage. Her second company then obtained the assignment of the mortgage by the original mortgagee.

That same year, her attorneys—now representing the second company— allegedly wrote to Koyfman to alert him of his continuing default on the mortgage from the time he took title. Thereafter, Kosterina's second company sued to foreclose, accelerating payment on the mortgage and naming both Kosterina and Koyfman as defendants. Koyfman's answer alleged that the first company had failed to effectively purchase the mortgage it attempted to foreclose on, since the payment

3

for the assignment should have satisfied the debt and extinguished the mortgage instrument's obligation. He also counterclaimed to quiet title due to the cloud created by the purported assignment.

In 2017, Kosterina found it hard to cope with the litigation expenses of her second company's foreclosure suit. Having consulted her attorneys, she then assigned her second company's rights under the mortgage to a third legal entity: the subsequent mortgagee. That same year, the subsequent mortgagee was substituted as the party foreclosing below. Koyfman then filed an answer to the second company's cross counter-claim, again challenging the subsequent mortgagee's standing as a note holder and alleging that he was not unjustly enriched because Kosterina deeded him the property in exchange for other real property interests of his.

After discovery and a trial where Koyfman and Kosterina testified, and different views were expressed as to the nature of the transaction,[2] the lower court entered judgment of foreclosure in favor of the subsequent mortgagee. The order

---

[2] It was disputed whether Kosterina's transfer of title to Koyfman was "gratuitous," as claimed by her, or one "among numerous exchanges of assets," as claimed by him. Koyfman gave deposition testimony that, in an independent effort to amicably and fairly split their assets, he ceded to Kosterina sole title to the property where the couple lived at the time, while, in return, she quit-claimed the apartment at issue to him. The trial court made no findings on this issue and, neither set of circumstances, if true, would change the legal result here. Accordingly, we express no view on this issue.

4

relevantly found that the subsequent mortgagee owned a valid and outstanding mortgage lien against the apartment; that Koyfman's deed subjected his interest to said mortgage; that both Koyfman and Kosterina had defaulted on the mortgage, the balance of which ascended to $72,095.27; and, as such, while Kosterina was personally liable for that debt, Koyfman was estopped from challenging the validity of the mortgage. Accordingly, the trial judge denied Koyfman's counterclaim and ordered the sale of Koyfman's apartment to satisfy the outstanding mortgage.

"To the extent the trial court's final judgment of foreclosure 'is based on factual findings, we will not reverse unless the trial court abused its discretion; however, any legal conclusions are subject to de novo review.'" Gonzalez v. Fed. Nat'l Mortg. Ass'n, 276 So. 3d 332, 335 (Fla. 3d DCA 2018) (quoting Verneret v. Foreclosure Advisors, LLC, 45 So. 3d 889, 891 (Fla. 3d DCA 2010)). Koyfman argues that the trial court erred in failing to find that the subsequent mortgagee did not own a valid mortgage assignment given that the purchase by or assignment of the original mortgage to Kosterina's second company was unenforceable under the Third Restatement of Property and CDC Builders, 151 So. 3d at 479. Before analyzing whether this case falls under CDC Builders, we clarify the contours of the standard recognized therein.

In CDC Builders, 151 So. 3d at 480, a contractor holding junior liens on real property built under contract appealed from a final summary judgment of foreclosure

5

in favor of the senior lien. The contractor unsuccessfully defended against the foreclosure and extinguishment of its liens, arguing that the foreclosing entity that acquired the senior mortgage by assignment was formed and managed by the same individuals controlling the entity that was the original owner and mortgagor of the property, and that the assignment had been a strategy by the owner to improve its development, fail to pay the contractor, and later extinguish any resulting liens. Id. We found that the evidence created an issue of fact as to whether the same individuals were behind the entity now foreclosing, and whether, in acquiring the original mortgage by assignment instead of satisfying it, their intent had been to defeat the interest of the contractor. Id. We observed:

> The law does not permit a person to borrow money from a bank, give the bank a mortgage, incur additional liens and junior mortgages on the property, purchase the mortgage back from the bank, and then foreclose on the mortgage for the primary purpose of eliminating the additional liens and junior mortgages.

Id. at 482. In so noting, we referred to the Third Restatement of Property, which explains:

> When a payment in full is made by a person who is primarily responsible for the obligation, but the payor and payee agree not to extinguish the mortgage, the payor might attempt to claim ownership of the mortgage, either under the principle of subrogation or by taking a formal assignment of the mortgage from the mortgagee. The payor might then purport to foreclose the mortgage against the holder of some junior lien or other interest subordinate to the mortgage. However, subrogation is inapplicable to

6

this situation, since one who is primarily responsible for an obligation cannot have subrogation upon paying it; Indeed, even a formal assignment of the mortgage to the payor would confer no power on the payor to foreclose the mortgage against junior interests, since doing so would unjustly enrich the payor.

Id. at 482-83. The Restatement relevantly recognized the challenge of some courts when confronted by unusual suits in this context:

In some cases, a property owner who has paid an obligation secured by the owner's land then brings suit to recover the obligation from another person. In some of these cases, the owner characterizes the payment as a "purchase" of the note and mortgage. Some courts have been misled by this characterization and have held that the obligation is enforceable if the mortgage has not merged into the fee. Because the owner intended to keep the interests distinct, these courts have held that the obligation is enforceable. As with the other situations described in this Comment *c*, however, the doctrine of merger is irrelevant to the issue of enforceability of the obligation. . . . When a property owner pays a mortgage debt, the owner's ability to enforce the debt against another is determined by the doctrine of subrogation. (1) An owner who is primarily liable for an obligation cannot recover from anyone: The owner's payment extinguishes the obligation.

Restatement (Third) of Property § 8.5 cmt. c (1997). We observed that "[t]his rule has been part of Florida law since at least 1932," and that "Florida has expressly recognized that this rule holds true even if the borrower obtains and forecloses the

7

mortgage through a corporation that it controls." <u>CDC Builders</u>, 151 So. 3d at 483.

Appropriate exceptions to the rule have also been recognized.[3]

The rule enunciated in <u>CDC Builders</u>, therefore, is that where payment in full

is made by a person who is primarily responsible for the obligation, but the payor

and payee nevertheless agree not to extinguish that obligation, that same payor may

not claim ownership of the obligation—whether under principles of subrogation or

assignment—or foreclosing on it "against the holder of some junior lien or other

interest subordinate to the mortgage." 151 So. 3d at 482. "[E]quity will not apply

---

[3] The Third Restatement of Property relevantly observes:

> In many situations a mortgage obligation is discharged by one having a legal duty to do so . . . However, in many situations subrogation is appropriate even though the subrogee is personally liable on the obligation being paid, if that liability is partial or secondary. One example is . . . the mortgagor who sells the real estate subject to, or with an assumption of, the mortgage debt, with the purchaser paying cash equal to the difference between the agreed purchase price and the balance owing on the mortgage debt. Such a mortgagor, while still personally liable to the mortgagee by virtue of having executed the original note or other evidence of debt, becomes, as between the mortgagor and the grantee, secondarily liable as a surety when the transfer occurs . . . The mortgagor may pay the debt and be subrogated to the mortgage (whether the transfer was with an assumption or was merely "subject to" the mortgage) as well as the debt (if the transferee assumed the debt).

Restatement (Third) of Property § 7.6 cmt. c (1997).

8

the principle of subrogation, where to do so would deprive a party of a legal right." Id. at 483.

The subsequent mortgagee's attempts to distinguish CDC Builders are unavailing. Although CDC Builders involved a contractor holding junior liens and the unjust enrichment at issue entailed the property owner's benefit from the contractor's work, the general rule applies where the original mortgagor or owner attempts to later extinguish not only subsequent junior interests, such as contractor liens, but also any "*other interest* subordinate to the mortgage." CDC Builders, 151 So. 3d at 483 (emphasis added). Here, as conceded by the subsequent mortgagee, Koyfman's interest is in fee simple subject to the mortgage. Although different from the contractor's junior interest in CDC Builders, Koyfman's is still an interest equally subject to the mortgage at issue, with vested legal rights the deprivation of which equity will not allow. Id.

Because CDC Builders applies, the lower court and subsequent mortgagee's reliance on C.T.W. Co.. v. Rivergrove Apartments, Inc., 582 So. 2d 18, 19 (Fla. 2d DCA 1991), is misplaced. CDC Builders correctly distinguished C.T.W., as in that case, unlike here, no sufficient evidence existed of *identity* between the original borrower, payor, or mortgagor and the subsequent mortgagee assigned the mortgage instrument and seeking foreclosure. 151 So. 3d at 485.

Here, it was undisputed that there was "substantial identity" between Kosterina and her first and second companies, through which she purported to preserve and assign the otherwise extinguished mortgage obligation allegedly justifying foreclosure below. This gave rise to the reasonable inference that Kosterina's preservation of the mortgage was intended to violate the rule adopted in CDC Builders. The inference was only reinforced by Kosterina's testimony as to why she attempted to preserve the mortgage.

She first answered that she did not know why she preserved and assigned the mortgage, and it had simply been her attorney's advice. Subsequently, she explained that she had intended to prevent the further ruin of her credit, as well as to foreclose on the property to recover her loss. The first amounted to no more than a conclusory and evasive answer and, the second, as the trial court noted, lacked any rational basis, since, having fully paid the balance of her personal obligation, her credit could not be further ruined on account of satisfied debt. Relevantly, when asked near the end of trial why her own personal debt was a "loss" that she should recover for by foreclosing a subordinate interest after her payment of that balance, the following exchange took place:

> [Counsel]: You're testifying . . . you're attempting to foreclose out and dispossess [the Subsequent Owner] of his property you're saying it was his obligation and I'm asking you at any point prior to the alleged . . . letter where was there any one notice to [him] you haven't paid this for five years. Why?

10

[Kosterina]: How about he never paid for his child support for five years? You want this person to pay for that? . . .

Thus, in addition to conclusory and insufficient reasons, Kosterina clearly alluded to Koyfman's alleged failure to pay child support as the reason why she devised the mortgage assignment. This provided clear and undisputed evidence that her primary purpose in devising the assignment transaction was to wrongfully divest Koyfman of title already legally vested in him, which fell short of the rule in CDC Builders.

"While it is true that the plaintiff by substitution 'stands in the shoes of the original plaintiff/mortgagee,' . . . an order of substitution does not create standing. Rather, the substituted party acquires the standing (if any) of the original plaintiff at the time the case was filed . . . [and] must prove its own standing." Sandefur v. RVS Cap., LLC, 183 So. 3d 1258, 1260 (Fla. 4th DCA 2016) (quoting Miller v. Kondaur Cap. Corp., 91 So. 3d 218, 219 (Fla. 4th DCA 2012)). Here, the rule recognized in CDC Builders precluded the assignment from conferring any power on the assignee to foreclose against the other interests subordinate to the mortgage. Kosterina's second company, thus, was legally estopped from foreclosing on the mortgage. The subsequent mortgagee could not, by purporting to purchase the defective assignment, exercise a right greater than that which it received. Thus, not only was it also estopped from doing so, but it simultaneously lacked standing to begin with, as it relied on an unenforceable mortgage.

11

Because the trial court erred in entering final judgment of foreclosure in favor of the subsequent mortgagee, we vacate the order, as well as the denial of Koyfman's counterclaim to quiet title. We remand for entry of judgment of dismissal of the subsequent mortgagee's complaint, for entry of judgment in favor of Koyfman on his counterclaim to quiet title, and for any other proceedings consistent with this opinion.

Reversed and remanded with instructions.